IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEREK STORR, KAREN STORR, and E.C.S., Plaintiff's Minor Child by her father and next friend DEREK STORR, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 13 C 3236 |
| v. | ) ) | Judge Robert W. Gettleman |
| THOMAS J. MARIK, | ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Derek Storr, Karen Storr, and their minor child have filed a pro se complaint against defendant Thomas Marik, alleging violations of the Fair Housing Act of 1988, 42 U.S.C. § 3601 et. seq. Defendant has filed a pro se motion for summary judgment, which plaintiffs oppose. For the reasons described below, defendant's motion is granted.

## **BACKGROUND**[1]

Plaintiffs and defendant initially signed a written Property Rental Agreement ("lease") on December 21, 2010, for the home located at 229 Woodstock Ave., Clarendon Hills, Illinois. The initial term of the lease ran from January 21, 2011, to April 30, 2013, with an agreed rent of $1,550.00 per month. The lease further provided that after the expiration of the initial term, the

---

[1]The following facts are, unless otherwise specified, undisputed and come from the parties' L.R. 56.1 statements. Both parties are acting pro se and both have failed to comply with the strict requirements of L.R. 56. Defendant failed to file a Statement of Material Facts as required by the rule, and plaintiffs likewise failed to file a statement of any additional facts. Both parties submitted affidavits and exhibits. As a result, the court liberally construes both defendant's "Statement of Facts" within his motion and accompanying exhibits as a Rule 56 statement of material facts, and plaintiffs' Response to the motion and accompanying exhibits as a statement of additional facts.

lease would become month-to-month. During the initial term of the lease, plaintiffs[2] allege that they requested that defendant make multiple repairs and accommodations to the property, and defendant failed to do so. Among these requests were installation of a bathroom grab bar, installation of an exterior light and hand rail, and mold removal. Defendant maintains that he has been responsive to plaintiffs' request for repairs.

In April 2012, plaintiffs learned through a levy notice that the IRS had filed a tax levy on defendant. Pursuant to the notice, plaintiffs paid their rental payment directly to the IRS, despite defendant's alleged instruction to continue paying him the rent directly.

In October 2012, plaintiffs advised defendant that they would like to extend the lease on the property beyond April 30, 2013. Defendant responded that the terms of the new lease would include a 40% increase in the rental payment. In February 2013, plaintiffs suggested counteroffer rental payments, each of which defendant refused. In that same month, plaintiffs allege that they renewed their requests for repairs to the property, and defendant visited the property to assess the potential repairs. Plaintiffs allege that defendant did not make any of the requested repairs, and further allege that defendant told them that they should look elsewhere for a residence because he had not advertised the property as handicap accessible. Defendant counters that plaintiffs were the first to suggest they were not suited to the property.

In March 2013, defendant advised plaintiffs that he would not renew the lease under the current terms and reaffirmed his offer of a 40% rental payment increase. The proposed new lease also contained additional terms which plaintiffs claim were burdensome. Plaintiffs refused

---

[2]Plaintiffs allege that Derek Storr is physically disabled as a result of myelogenous leukemia and treatment therefor, and that E.C.S. is physically disabled as a result of a condition impairing her ability to smell and breathe.

to sign the new lease, and on April 30, 2013, attempted to tender a rental payment of $1,550.00 for the month of May. Defendant filed an action for forcible entry and detainer in the state court. Plaintiffs vacated the premises on June 30, 2013.

Plaintiffs allege that defendant violated the Fair Housing Act by: (1) telling the plaintiffs to look elsewhere for housing; (2) failing to make repairs and reasonable accommodations to the property; (3) failing to honor the month-to-month provision of the lease; (4) demanding an exorbitant rental payment increase; (5) failing to make reasonable accommodations in the negotiation of the new lease; (6) retaliating against plaintiffs for providing defendant's contact information to the IRS, paying rent directly to the IRS, and contacting the Village when defendant failed to make repairs to the property. Defendant has filed a motion for summary judgement on all of plaintiffs' claims.

## **DISCUSSION**[3]

---

[3]The court notes that plaintiffs have based all of their claims on the protections enumerated in Section 3604 of the Fair Housing Act. Defendant has not specifically challenged
(continued...)

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Unterreiner v. Volkswagen of Am., Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed.R.Civ.P. 56(c); Becker v. Tenenbaum–Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to

---

³(...continued)
the applicability of the Act, but the court notes that plaintiffs' complaint does not properly allege that defendant is subject to the requirements of the Fair Housing Act. The Act provides, at 42 U.S.C. 3603(b)(1), that the provisions of Section 3604 do not apply to "any single-family house sold or rented by an owner: Provided, That such private individual owner does not own more than three such single-family houses at any one time . . . ." The property in question is a single-family home and is rented by defendant, the owner, as established by the pleadings. Plaintiffs' complaint alleges that defendant "on information and belief . . . rents out at least three houses," and lists the addresses of the two other properties defendant is alleged to own: 149 Chicago Avenue, Clarendon Hills, Illinois; and 123 Ogden Ave, Clarendon Hills, Illinois. There is, however, no allegation that these properties are single-family homes. The statute requires that defendant own and rent more than three single-family homes in order to be subject to the requirements of Section 3604. Plaintiffs' allegation that defendant rents at least three properties does not meet the single-family home exception detailed in Section 3603. Although the complaint is deficient, the court declines to award summary judgment to defendant this ground, because it was not argued by defendant or responded to by plaintiffs.

the party opposing the motion. See Fisher v. Transco Services–Milwaukee Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).[4]

Plaintiffs allege that defendant's actions violated the Fair Housing Act, which makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of [] that buyer or renter." 42 U.S.C. 3604(f)(1)[5]. Under subsection (f)(3)(A) of the same section, discrimination includes "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted." Discrimination also includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. 3604(f)(3)(B).

Plaintiffs also allege a violation of Section 3617 of the Act, which makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on

---

[4] Because the parties have not complied strictly with the requirements of L.R. 56, the court has considered all of the underlying documentation provided and reviewed the record thoroughly to analyze the parties' claims.

[5] Although the term "handicap" has been replaced by the less pejorative term "individual with a disability" in the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and other legislation, the "handicap" label continues in the Fair Housing Act and will be used in this opinion.

account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by Section 3604.

Defendant has moved for summary judgment on all of plaintiffs' claims. The pro se complaint does not separate plaintiffs' claims into enumerated counts, but in their response to the motion for summary judgment, plaintiffs delineate four counts: denial of reasonable accommodation in violation of 42 U.S.C. § 3604(f)(3)(B) (Count One); discriminatory statements in violation of 42 U.S.C. § 3604(c) (Count Two); discrimination on the basis of disability in violation of 42 U.S.C. § 3604(a) (Count Three); and retaliation in violation of 42 U.S.C. § 3617 (Count Four).

**A.     Count One**

Plaintiffs' first count alleges denial of reasonable accommodations, in violation of 42 U.S.C. § 3604(f)(3)(B). That section of the Act defines discrimination as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Both defendant's motion and plaintiffs' response to the motion for summary judgment characterize this count as an accommodation claim, and plaintiffs argue that they have met their burden to demonstrate a factual dispute regarding whether they requested "reasonable accommodations and/or modifications."

"To prevail on an FHA accommodation claim, a disabled plaintiff must establish that he requested and was denied an accommodation that was both reasonable and necessary to afford him an equal opportunity to use and enjoy his dwelling." United States v. WHPC–DWR, LLC, 491 F. App'x 733, 736 (7th Cir. 2012). Defendant has broadly challenged the sufficiency of

6

plaintiffs' accommodation claim. Plaintiffs' complaint and response to the motion for summary judgment cite defendant's alleged failure to make repairs to the property, failure to honor the month to month provision of the lease, and failure to negotiate the terms of a new lease as examples of reasonable accommodations. None of these alleged actions qualify as reasonable and necessary accommodations to "policies, practices, or services."

Whether an accommodation is reasonable is a "highly fact-specific inquiry and requires balancing the needs of the parties. An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 784 (7th Cir. 2002) (internal citations omitted). An accommodation is necessary if without the accommodation, the plaintiff will be denied an equal opportunity to obtain the housing of her choice. See id. at 784. Generally, accommodations qualify as necessary only when "the rule in question, if left unmodified, hurts handicapped people by reason of their handicap, rather than ... by virtue of what they have in common with other people, such as a limited amount of money to spend on housing." Wis. Cmty. Servs., Inc. v. City of Milwaukee, 465 F.3d 737, 749 (7th Cir. 2006) (internal quotation marks omitted).

Defendant's alleged failure to remove mold, install lighting, check for potential toxins, and replace faulty windows are properly characterized as landlord-tenant issues; they are not refusals to alter an existing policy or practice to allow an individual with a disability to enjoy the same access to a property that other individuals enjoy. Nor is the alleged refusal to honor a month to month provision of a contract a failure to make a reasonable accommodation to a disabled person. Pursuant to the initial lease, defendant provided adequate notice to plaintiffs that he did not intend to continue the initial lease past the initial term. Defendant need not allow

plaintiffs to continue the initial term of the lease due to their disabilities, because such an accommodation is not necessary under the law. A month to month lease provision is a practice that does not hurt the individual because of their disability. For the same reasons, any alleged refusal to negotiate the terms of a new lease is not a failure to provide a reasonable accommodation.[6] Because there is no evidence in the record that defendant failed to make reasonable accommodations, plaintiffs' first claim must fail.[7]

**B.       Count Two**

Count Two alleges discrimination on the basis of disability in violation of 42 U.S.C. § 3604(c). This section makes it unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." Courts have affirmed that oral statements made in connection with the sale or rental of a dwelling are within the scope of this section. See <u>Krieman v. Crystal Lake Apartments Ltd. P'ship</u>, 05 C 0348, 2006 WL 1519320 (N.D. Ill. May 31, 2006).

---

[6]Plaintiffs' complaint contains a separate count for refusal to negotiate a lease. The court discusses this count more thoroughly below.

[7]Out of an abundance of caution, the court also notes that, if one were to construe Count One as a claim of failure to permit reasonable modifications to the premises, plaintiffs' claim would still fail. There is no evidence in the record that plaintiffs' were denied permission to make any modifications to the premises at their own expense. Plaintiffs' have alleged that defendant failed to install a grab bar in the shower of the home and a hand railing at the front door, but have not alleged or demonstrated that defendant refused to allow them to install such modifications themselves, at their own expense, as required by the Act.

To survive a motion for summary judgment, plaintiffs must demonstrate that: (1) the defendant made the statement; (2) the statement was made with respect to the rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination against the plaintiffs on the basis of their disability. White v. HUD, 475 F.3d 898, 904 (7th Cir. 2007) (citing 42 U.S.C. § 3604(c)). "Actions or statements violate 42 U.S.C. § 3604(c) if they would convey to an ordinary reasonable listener or reader that dwellings are not available to a particular group of persons" based on their disability. Walker v. McCoy, 10-C-192, 2012 WL 1191470 (E.D. Wis. Apr. 10, 2012). Under the Seventh Circuit standard, the ordinary listener is "is neither the most suspicious nor the most insensitive of our citizenry." Jancik v. Dep't of Hous. & Urban Dev., 44 F.3d 553, 556 n.4 (7th Cir. 1995).

Plaintiffs allege that during a February 23, 2013, conversation with defendant, defendant stated that the property was not a good fit for plaintiffs and suggested plaintiffs look elsewhere. Plaintiffs also allege that defendant made comments that plaintiff Derek Storr did not look disabled and that the property had not been advertised as handicap accessible. Plaintiffs argue that defendant's alleged statement regarding Derek Storr's disability gives rise to an inference of discrimination in light of the circumstances. Plaintiffs also allege that these comments were made in connection with the rental of the property, because they were made while the parties were discussing repairs to the property that plaintiffs wanted made prior to any renewal of the lease.

Defendant counters that it was Derek Storr who first made the comment that the family was not a good fit for the property in an email to defendant on the previous day, February 22, 2013. Defendant replied to that email, stating that "[i]f you feel the house is not a fit for you and

9

your family then you may want to move elsewhere." Therefore, in essence, defendant argues he was simply agreeing with plaintiff's previous statement.

In context, none of the alleged statements by defendant would cause an "ordinary listener" to believe that defendant would not renew plaintiffs' lease because of their status as individuals with disabilities. Neither the alleged statement that plaintiff Derek Storr did not appear disabled or the alleged statement that the property had not been advertised at handicap accessible evince a preference for individuals without disabilities. Defendant's comments essentially repeating plaintiffs' statement about the "fit" of the house are not sufficient to demonstrate an intention on defendant's part to preclude plaintiffs from renewing the lease. The statement does not support an inference of defendant's own preference, but rather is a repetition of plaintiffs' statement. Further, defendant has demonstrated that he repeatedly offered plaintiffs the opportunity to renew the lease, albeit at the increased rate[8], including numerous overtures after the February date in question, thus undermining their claim that defendant had discriminatory intentions. Plaintiffs have therefore not demonstrated the required elements of a claim for discriminatory statements.

## C. Count Three

Count Three alleges that defendant refused to negotiate the terms of a lease for the property in violation of 42 U.S.C. 3604(a). Section 3604(a) makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or

---

[8]There is no evidence in the record that defendant offered the new lease with a higher rent in response to plaintiffs' complaints related to the condition of the property. Defendant proposed a renewal of the initial lease, at an increased rental rate, in October 2012. Plaintiffs' initial response indicated surprise at the new proposed rent, but plaintiffs did not articulate significant dissatisfaction with any maintenance of the property until February 2013.

otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." Plaintiffs have failed to demonstrate that defendant refused to negotiate with plaintiffs on the basis of their disabilities.

After defendant offered the terms of the new lease to plaintiffs, plaintiffs voiced two separate concerns. In February 2013, plaintiffs first indicated that they would not renew the lease unless certain repairs were made, and in late March 2013, indicated that they wished to negotiate various lease terms that they believed to be onerous.

Regarding the first concern, plaintiffs' complaints about repairs to the property is a landlord-tenant issue, and concerns their satisfaction with the property when considering renewal. Section 3604 does not require defendant concede to plaintiffs' request for repairs simply because lease negotiations were ongoing.

Regarding the second concern, plaintiffs argue that defendant refused to negotiate with plaintiffs and imposed harsh and unnecessary deadlines for the renegotiation of the lease. The documents tendered by both plaintiffs and defendant establish that defendant communicated the higher rental rate in October 2012. In response to defendant's multiple inquiries into plaintiffs' intentions, plaintiffs repeatedly stated that they were still contemplating whether they intended to renew the lease. After four months and an email from defendant stating that he would like to begin to advertise the property if plaintiffs did not intend to renew, plaintiffs began to request repairs to the property and eventually actively negotiate the terms of the new lease. Although defendant did propose a new lease with new terms on March 5, 2013, and imposed a deadline of March 27, 2013, any delay or restrictive deadlines that arose were caused by plaintiffs' inaction, not any discriminatory animus on defendant's part. As evidenced by the documents tendered,

11

plaintiffs' correspondence inquiring into the terms of the new lease does not begin until March 29, 2013, just short of the new April 1, 2013, deadline defendant cited to renew the lease. Additionally, upon learning of an emergency incident related to Derek Storr's health that occurred on March 30, 2013, defendant voluntarily extended the deadline an additional 24 hours. These actions do not demonstrate an unwillingness to negotiate.

Further, plaintiffs' claim that defendant refused to negotiate the terms of the lease are belied by email correspondence on February 20, 1013, wherein defendant offers a sliding scale approach to rent payments. Defendant's email states: "I am trying to work with you and Derek on the rent since you have been good tenants and I don't think you really want to move out by May 1." The email correspondence from the next day indicates that plaintiffs then began to state that they were dissatisfied with defendant's maintenance of the property. In defendant's reply, he offered to meet with plaintiffs and perform a walk-through of any maintenance issues. Subsequent emails confirm that the walk-through took place.

Additionally, none of the non-monetary terms of the new lease that plaintiffs requested to negotiate are related to plaintiffs' disabilities or demonstrate a serious hardship based on those disabilities. Plaintiffs' concern about the prohibition on running a home office was addressed in writing by defendant, who reassured plaintiffs that the prior written consent to operate a home office would still be in effect despite the new lease. Plaintiffs' complaint also lists a required home renters insurance policy as a burdensome element of the new lease. The documents provided by plaintiffs, however, include an email wherein plaintiffs state that "the home renters insurance policy will not be a problem. We have had a policy in effect the entire time we have lived here." The complained of new lease term requiring that plaintiffs not park "unlicensed

vehicles on the premises" in fact prohibits the parking of "inoperable" vehicles on the property. Plaintiffs' correspondence indicates the car is operable; thus the lease term is not burdensome, and in any event, unrelated to plaintiffs' disability. For these reasons, plaintiffs have not demonstrated that defendant refused to negotiate for the rental of the property.

**D.     Count Four**

Count Four alleges that defendant retaliated against plaintiffs for the exercise of their rights under the Fair Housing Act, in violation of 42 U.S.C. § 3617. To survive summary judgment on a claim for retaliation, plaintiffs must show that: (1) plaintiffs are protected individuals under the Act; (2) plaintiffs were engaged in the exercise of their fair housing rights; (3) defendant threatened, coerced, intimidated or interfered with plaintiffs on account of their protected activity under the Act; and (4) defendant was motivated by a desire to discriminate. Bloch v. Frischholz, 587 F.3d 771, 783 (7th Cir. 2009). Interference is more than a "quarrel among neighbors" or an "isolated act of discrimination," but rather is a "pattern of discrimination, invidiously motivated." Id.

It is undisputed that plaintiffs are protected individuals. In support of their claim that they were engaged in the exercise of their Fair Housing rights, plaintiffs state that: in April 2012, they paid rent directly to the IRS; plaintiffs contacted the Village of Clarendon Hills regarding possible code violations and requested inspections; and plaintiffs requested modifications to the property. The first action detailed does not qualify as an exercise of plaintiffs' Fair Housing Rights. A dispute over whether to pay rent directly to a landlord or to the IRS pursuant to a levy is not the exercise of a right protected by the Act; it is completely unrelated to plaintiffs' disability.

13

Even if plaintiffs' attempts to request accommodations or complaints to the Village are considered an exercise of Fair Housing rights, plaintiffs have failed to demonstrate that defendant was motivated by a desire to discriminate. Plaintiffs argue that the temporal proximity between the events in question should be sufficient to infer an intent to discriminate, but the court disagrees. There is nothing in the record that links plaintiffs' payment of April 2012 rent to the rent increase in October 2012. Additionally, defendant offered an explanation for the rent increase in the very email that communicated the new rate, which plaintiffs have not argued is pretextual. Regarding the code violations, plaintiffs' complaint to the Village came well after defendant offered to renew the lease at the increased rate. The record demonstrates that defendant frequently communicated with plaintiffs about the possibility of renewing the lease and initially stressed that he would work with plaintiffs to come to an agreement. As discussed above, plaintiffs' argument that the new lease terms were onerous and motivated by plaintiffs' disabilities is without merit.

Plaintiffs further argue that defendant retaliated by refusing to meet in person to discuss lease terms. The record demonstrates that plaintiffs did not contact defendant about the lease terms until very shortly before the deadline and that defendant declined to meet in person but offered a phone conversation. All of the evidence in the record is more consistent with defendant's frustration with plaintiffs' last-minute efforts to change the terms of the lease than any animus directed at plaintiffs because of their disabilities. For these reasons, plaintiffs have failed to demonstrate retaliation in violation of the Fair Housing Act.

**CONCLUSION**

As demonstrated by the facts discussed above, the conflict between the parties is nothing more than a typical landlord-tenant dispute that plaintiffs have attempted to shoehorn into a Fair Housing Act claim. Indeed, there is no evidence that significant disputes existed prior to defendant's decision to raise the rent for a new lease. Because plaintiffs' claims of discrimination find no support in the record, there is no basis for federal jurisdiction under the Fair Housing Act. For these reasons, defendant's motion for summary judgment on all counts is granted.

**ENTER:** December 10, 2013

_____
**Robert W. Gettleman
United States District Judge**